**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE**

**CIVIL ACTION NO. 05-71-DLB**

**CHARLES C. REID, ET AL.**                                                                         **PLAINTIFFS**

**vs.**                          **MEMORANDUM OPINION & ORDER**

**MARKWEST HYDROCARBON, INC., ET AL.**                       **DEFENDANTS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This is an action for personal injuries and property damage caused by a natural gas pipeline explosion. Suit was originally filed in the Floyd County, Kentucky, Circuit Court and removed here by Defendants. Pending before the Court are Plaintiffs' motion to remand (Doc. #6), and Defendant Robert Cooper's motion to dismiss Plaintiffs' claims against him (Doc. #7).

Following oral argument on these motions, the Markwest[1] and Equitable[2] Defendants moved for leave to file a post-hearing brief. (Doc. #40) Plaintiffs oppose this request and have separately moved to strike Defendant's post-hearing brief or, in the alternative, seek leave to file a tendered response thereto. (Doc. #45) These supplemental filings have been considered by the Court in rendering its decision, and Defendants' motion to file post-

---

[1] There are several named Defendants who are all part of the Markwest family of companies. They are: Markwest Hydrocarbon, Inc., Markwest Energy Partners (a limited partnership), Markwest Energy GP, LLC, Markwest Energy Appalachia, LLC, Markwest Energy Operating Company, LLC, Markwest Hydrocarbon Partners Ltd., all collectively referred to as "Markwest Defendants" unless otherwise noted.

[2] There are also several Defendants connected with the Equitable family of companies. They are: Equitable Production Company, Equitable Resources, Inc., Kentucky West Virginia Gas Company, LLC, Equitable Field Services, LLC, Equitable Energy, LLC, Equitable Gas Company, and Kentucky Hydrocarbon. They are collectively referred to as the "Equitable Defendants" unless otherwise specified.

hearing brief will therefore be **granted** and Plaintiffs' motion to strike **denied,** though Plaintiffs request to respond will also be **granted.**

The Court has reviewed the parties' filings and supplemental filings, the case record, and heard from counsel at oral argument. For the reasons that follow, the Court finds that diversity subject matter jurisdiction is lacking and that this action must therefore be remanded to the Floyd Circuit Court from which it was removed.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 8, 2004, a natural gas explosion occurred at the Rolling Acres Estates Subdivision. Plaintiffs, each of whom are/were connected to the subdivision as either a homeowner, renter, or guest, allege they suffered severe bodily injury, damage to their real property, and/or damage to their personal property as a result of this explosion.

Plaintiffs allege the explosion was caused by a leak in a pipeline used to transport liquid natural gas. The pipeline at issue was built in 1956-57 and traversed some 140 miles, running from Langley, Kentucky, to South Shore, Kentucky. It is owned by the Equitable Defendants and operated by the Markwest Defendants. The pipeline had allegedly been leaking for some time, contaminating the surrounding homes and property.

Plaintiffs assert the pipeline had corroded and leaked at various locations on at least 11 different occasions prior to the subject explosion. They point out that a Corrective Action Order from the Office of Pipeline Safety notes that Markwest reported at least 13 prior leaks, 11 caused by corrosion. The pipeline had allegedly been leaking in the subdivision area for some time, at least long enough to completely saturate the soil around the pipeline and underneath some of the homes. On the morning of November 8, the gas was leaking from the pipe to such an extent it had created a fog. There was also liquid gas

flowing in the street, observed by some of the residents who thought it was draining water. The source of ignition of the gas is unknown. When the gas ignited on November 8, 2004, it caused multiple violent explosions and fires.

Plaintiffs have sued the Equitable Defendants, Markwest Defendants and certain of their employees. Plaintiffs allege the leaking gas, contamination, and explosions were caused by the failure to properly construct, maintain, repair and/or monitor the pipeline by these Defendants. Plaintiffs sue each of these Defendants for negligence, strict liability, failure to warn, trespass, private nuisance, and punitive damages; and the Markwest and Equitable Defendants for vicarious liability.

The Markwest Defendants and certain of their employees also named as Defendants -- Keith Hayes, Tim Castle, and Jeff Stark -- removed this action from state court, alleging diversity subject matter jurisdiction. Attached to their Notice of Removal was a consent to removal by the Equitable Defendants and their employee, Robert Cooper.

The amount in controversy is not contested. Whether all Plaintiffs are of diverse citizenship from all Defendants is contested. The Markwest and Equitable Defendants submit that complete diversity exists if the citizenship of those Defendants fraudulently joined is disregarded. They contend Plaintiffs have fraudulently named Hayes, Castle, and Stark, each of whom are nondiverse Defendants, in an effort to prevent removal of the action.[3] Plaintiffs seek remand on the basis that they have stated colorable claims under Kentucky law against these nondiverse Defendants.

---

[3]Defendant Cooper, Equitable's employee, was also sued individually, but Defendants do not allege he was fraudulently joined, perhaps because the record indicates he is a resident of West Virginia. Cooper filed a separate motion to dismiss on the basis he had no contact with the pipeline until after the explosion. Plaintiffs argue in response that as compliance manager, his negligence was that of error of omission. This motion on the merits of the claim against Cooper cannot be considered by the Court, as jurisdictional authority to hear these proceedings is lacking.

**DISCUSSION**

Defendants bear the burden of establishing that removal of an action is proper. *Conrad v. Robinson,* 871 F.2d 612, 614 (6th Cir. 1989). The original jurisdiction required by 28 U.S.C. § 1441, Defendants maintain, is found in the parties' diversity of citizenship. This jurisdictional base requires the citizenship of each plaintiff be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996). In this case, since Plaintiffs and the individual Defendants Hayes, Castle, and Stark are not of diverse citizenship, Defendant must establish that they were fraudulently joined in order to defeat removal.

*A.     Standard of Review*

"Claims of fraudulent joinder must be asserted with particularity and supported by clear and convincing evidence." *Parker v. Crete Carrier Corp.,* 914 F. Supp. 156, 159 (E.D. Ky. 1996). The inquiry is whether plaintiff has at least a colorable cause of action against defendant in state court. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir. 1999). Defendants "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. American Tobacco,* 183 F.3d 488, 493 (6th Cir. 1999)(quoting *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir. 1994)). In other words, the question is, "whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." *Alexander,* 13 F.3d at 949. Because the burden of proving fraudulent joinder rests with the removing party, any disputed questions of fact or ambiguities in controlling state law must be resolved in favor of the nonremoving party. *Id.; Coyne,* 183 F.3d at 493. Applying this standard to the case at bar, Defendants must therefore present

sufficient evidence that Plaintiffs could not have established a cause of action against these nondiverse Defendants under Kentucky law.

### B. Does Kentucky permit a claim for negligence against not only an employer, but also its employee?

The Court directs its attention to the negligence claim against Markwest employee Defendants Hayes, Castle, and Stark.[4]

Kentucky law permits servants or employees to be sued personally for alleged negligence in the course and scope of their duties for the principal or employer.[5] This is a long-standing principle of Kentucky law. *See Carr v. Barnett,* 580 S.W.2d 237 (Ky. Ct. App. 1979) and *Enos v. Kentucky Distilleries & Warehouse,* 189 F. 342 (6th Cir. 1911). In *Carr* plaintiffs obtained a judgment against Carr for directing unauthorized removal of dirt from their property. Carr claimed he was merely an agent for the contractor, no judgment was sought against the contractor, and he could not be personally liable. The court of appeals disagreed, noting that "an agent is personally liable for his own tortuous acts even though performed within the scope of his employment and under conditions which impose liability upon the principal also." *Id.* at 240. Citing an 1833 decision, the Kentucky Court of Appeals remarked "it has long been the law of this jurisdiction that the party harmed can look for reparation from the agent only without the necessity of proceeding against the

---

[4]Though Plaintiffs' Complaint asserts claims for nuisance, trespass, and strict liability, Defendants' Notice of Removal notes that the majority of Plaintiffs' allegations relate to negligence. Although Defendants challenge that the employee Defendants cannot be sued under any of these legal theories, consideration of the other theories is unnecessary since the Court concludes a negligence claim can be stated.

[5]Analysis of those decisions relied upon by Defendants that are from jurisdictions other than Kentucky is unnecessary, as the relevant consideration is whether Kentucky has addressed the issue and if so, its stance. As there is relevant, binding authority from the Kentucky courts, how other jurisdictions have viewed the issue is not appropriate. Nor does the Court find the "owners and occupiers of land" argument presented by Markwest legally relevant to addressing whether a colorable claim for negligence can be stated against its employees.

principal." Kentucky more recently reiterated this principle in *Cohen v. Alliant Enterprises, Inc.,* 60 S.W.3d 536, 539 (Ky. 2001)("a plaintiff may bring suit and recover from the principal under a vicarious liability theory without first filing suit and getting a judgment against the agent" or may "sue[ ] both the principal and the agent together").

*Enos* is also insightful.  The Sixth Circuit, applying Kentucky law, held that nondiverse employee defendants (a superintendent and foreman of a distillery) and the corporation they worked for could both be sued because settled Kentucky law says "the servant whose negligent act creates the liability of the corporation may, as a matter of right be joined as defendant with the corporation." *Enos,* 189 F. at 345.  This holding was in the specific context of a fraudulent joinder allegation.  The Sixth Circuit vacated the district court's denial of remand, which also necessitated vacating the verdict and judgment, since the district court had pressed on with the case by finding it had subject matter jurisdiction. *Id.*  More recently, in *Terry v. Jackson,* 19 Fed. Appx. 377, 379 (6th Cir. 2001)(unpublished decision), the Sixth Circuit noted:

> There is no authority under Kentucky law that an individual is not jointly and severally liable for torts committed within the scope of employment.  In denying plaintiff's post-judgment motion, the district court noted that the corporation likely will pay any money judgment awarded in this case.  While this may be true as a practical matter, the individual defendants may nonetheless be jointly liable.  Under these circumstances, the district court lacked diversity of citizenship jurisdiction over plaintiff's complaint at the time of removal because plaintiff and the two individual defendants undisputedly are citizens of Kentucky.

Defendants acknowledged at argument this principle is an accurate reflection of Kentucky law; that is, that an agent is personally liable for his own tortious actions even in the scope of employment.  But Defendants distinguish this legal principle as also requiring evidence that an employee owes a personal legal duty directly to a plaintiff that is

*independent* of the duty owed by the employer. In support, they cite *Aubrey's Adm'r v. Stimson,* 169 S.W. 991 (Ky. 1914). Their reliance upon *Aubrey* is misplaced. Plaintiff in *Aubrey* tried to hold a corporate officer (the president/director) personally liable for injury plaintiff sustained from a boiler explosion, but the court concluded the officer did not owe a legal duty because he was not in active control of the manufacturing plant. *Id.* at 991. Indeed, the court said the operation of the plant had been committed to its general manager, and the engineer had a duty to inspect the boiler and make needed repairs or report them. *Id.* In other words, they were directly involved in and so responsible for the task, in contrast to the corporate officer whose conduct was not connected to the task but to his duties to the corporation as an officer.

Defendants also cite to two older Kentucky cases, *Pirtle's Adm'x v. Hargis Bank & Trust Co.,* 44 S.W.2d 541 (Ky. 1932) and *Haynes' Adm'rs v. Cincinnati, N.O. & T.P.R. Co.,* 140 S.W. 176 (Ky. 1911), though neither of these cases helps their cause. *Haynes* reiterates the principle that an agent can be sued for his independent negligent acts. Equitable submits that the case is an example of a claim against a corporate employee being rejected for failure to show an "independent personal legal duty." But a careful reading reveals the court found the engineer did owe a duty to a third party, and there simply was no evidence that he had *breached* that duty. *Haynes' Adm'rs,* 140 S.W. at 179.

As for *Pirtle's Adm'x,* Defendants offer that it stands for the proposition that personal liability is imposed upon a servant or employee only "if the duty rested upon him in his individual character, and was one that the law imposed upon him independent of his agency or employment." *Id.* at 546. Defendants have taken this language out of context. The court in *Pirtle's Adm'x* was quoting from another case's distinction of circumstances

7

where a servant's duty ran to the master only, versus the duty running to others by virtue of the nature of the obligation owed. One of the defendants in *Pirtle's Adm'x* was the president of co-defendant bank, with certain duties owed by him to the bank in his status as an officer. *Id.* The bank, as trustee, was in charge of managing and operating a hotel, the same hotel where a fire, left unchecked due to lack of required fire safety equipment, resulted in the death of plaintiff's decedent. *Id.* at 542-43. Defendant bank president was directly involved in the management and operation of the hotel in the course and scope of his employment with the bank. *Id.* at 542. The duties he assumed were not in conjunction with the obligations he owed to the bank as its president, but were duties assumed as the bank's servant or agent in fulfilling the bank's trust obligations. In finding that defendant bank president could be held accountable in negligence for his conduct, the court expressed that:

> One of the clearest principles which this court has recognized and applied is that an agent of a corporation is liable in damages for injuries suffered by third persons because of his (the agent's) tort, regardless of whether he acted on his own account or in behalf of a corporation, and regardless of whether or not the corporation is also liable.

*Id.* at 546.[6]

Thus, Defendants' stance that in order to hold an employee individually liable, he must owe a duty to a third party that is independent from a duty owed to the employer is

---

[6]In reaching this conclusion, the court in *Pirtle's Adm'x* examined the reasoning of several other courts, one of which was the source for the language quoted by Defendants. One of the other decisions the court examined explained the rationale underlying an agent's tort liability in this way:
> It is the actual, personal negligence of the agents which constitutes the constructive negligence of the corporation. The corporation acts through and by them, and they act for the corporation; and, when their acts or neglects result in injury to third persons, they are equally responsible with their principal.... We hold that the mere relation of agency does not exempt a person from liability for any injury to third persons, resulting from his neglect of duty, for which he would otherwise be liable. *Id.*

not an accurate statement of Kentucky law. The employee can owe a duty to third parties that arises from and is dependent upon his particular position for the employer.[7]

### C. Have Plaintiffs stated a colorable claim of negligence against Defendant employees?

Aside from any defense argument that a claim for negligence against the individual Defendants is not recognized under Kentucky law, they also assert Plaintiffs have failed to adequately plead a colorable claim against them. Plaintiffs' Complaint alleges, *inter alia,*

> That the leaking gas, contamination, and the subsequent explosions were a direct and proximate cause of the actions and/or failures to act, on behalf of the Equitable Defendants, the MarkWest Defendants, and the individual employees in failing to properly construct, maintain, repair, and/or monitor the subject pipeline, and they are therefore liable for the damages resulting therefrom. ¶ 35
>
> That the Equitable Defendants, the MarkWest Defendants, and the Individual Employees owed a duty of ordinary care to the Plaintiffs to construct, maintain, repair, and/or monitor their natural gas pipeline in such a manner as to prevent the escape and ignition of gas therefrom. ¶ 40
>
> That the Equitable Defendants, the MarkWest Defendants, and the Individual Employees knew or should have known in the exercise of ordinary care that their pipeline was in a dangerous condition and subject to leaking, contamination, and explosions. ¶ 41
>
> That the Equitable Defendants, the MarkWest Defendants, and the Individual Employees failed in their duty of ordinary care and are liable for the resulting damages sustained by the Plaintiffs as a direct and proximate result of their actions as set forth herein. ¶ 42
>
> That the Equitable Defendants, the MarkWest Defendants and the Individual Employees failed to inform and educate the Plaintiffs as to the location and existence of the pipelines, how to recognize potential gas leaks and, who to inform if a potential gas leak was/is suspected. ¶ 51

---

[7] At oral argument, Defendants offered as an example of how such an "independent" duty to third parties would arise as that of a commercial motor vehicle accident. While the truck driver owes a duty to his employer, he owes a separate legal duty to third parties to operate the vehicle nonnegligently. However, this duty of safe operation is also a duty owed by him to his employer; they are not mutually exclusive.

Defendants first maintain the Complaint lacks individualized allegations of any actual legal duty owed by them. In support, they look to *Toadvine v. Cincinnati, N.O. & T.P. Ry. Co.,* 20 F. Supp. 226 (E.D. Ky. 1937) for the proposition that an employee who commits no negligent acts cannot be personally liable for negligence of his employer or another employee who is not under his supervision or control. *Toadvine*, however, is easily distinguished from this case. *Toadvine* involved suit against the railroad and its signal tower operator for failing to stop a train after plaintiff motorist was on the crossing. The decision focused upon what legal duty, if any, was owed by the tower operator. The court noted that the railroad had a duty to provide and maintain a reasonably safe crossing, but this general overall duty was not imposed on the tower operator, nor could the court identify "some obligation or duty towards the plaintiff, which the [operator] has disregarded or violated." *Id.* at 227. There has to be some act or service owed or a want of due care. Although plaintiff in *Toadvine* argued that the operator personally should have known that the car was stalled on the crossing, there simply was no allegation that the operator was required "by reason of his employment or otherwise" to keep a lookout or give warning to travelers of the train's approach, or to exercise any care whatsoever to discover that persons using the crossing were in peril. *Id.*

Here, Plaintiffs have alleged that the individual Defendants in conjunction with their employment owed a duty to construct, maintain, repair, and/or monitor the pipeline in question and/or to inform and educate Plaintiffs about the pipeline. That Hayes, Castle, and Stark were each in fact responsible for at least one of these duties in conjunction with their employment is confirmed by the affidavits each submitted in opposition to remand (pipeline technician Stark responsible to perform maintenance in the form of a corrosion

10

protection survey; senior pipeline technician Castle responsible to perform maintenance in the form of inspections; and area manager Hayes, at a minimum, responsible to inform and educate about the pipeline, if not by his title also having the duty to ensure that the duties of Castle and Stark are properly performed).

Despite these allegations of duty, Defendants argue that Plaintiffs' Complaint alleges no specific act or omission by them in breach of these duties. They maintain Plaintiffs have no reasonable possibility of recovery against Hayes, Castle, and Stark individually because they have not alleged any specific allegations against them personally; just that there were construction, maintenance, repair and monitoring failures related to the pipeline that resulted in the explosion.

Defendants rely upon *Morgan v. O'Neil,* 652 S.W.2d 83 (Ky. 1983) and state law for pleading standards. Fraudulent joinder examines whether a colorable claim can be asserted in state court, *Jerome-Duncan,* 176 F.3d at 907, typically looking to state substantive law for the requirements of that cause of action. But actual pleading standards in federal actions are governed by federal law, even in diversity actions where state substantive law applies. 5 C. Wright & A. Miller, *Federal Practice & Procedure* §§ 1204 (2d ed. 1990); *Minger v. Green,* 239 F.3d 793, 800 (6th Cir. 2001). The Supreme Court in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), recently reiterated federal pleading requirements. That is, under the federal rules, a complaint is required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). This is also Kentucky's pleading standard. Ky. R. Civ. P. 8.01(1). Discovery and summary judgment

motions are then used to define disputed facts and issues and dispose of unmeritorious claims.

Plaintiffs maintain they named these particular employees because they believed them to be the primary employees responsible for work that was or should have been performed on the pipeline. Defendant Hayes is the area manager, and responsible for supervising the pipeline. While he may not have performed any actual repairs or maintenance on the pipeline, it is argued that he failed to supervise those who were responsible for inspecting. Plaintiffs note that Hayes also has a regulatory obligation to notify and educate residents about the pipeline. Hayes offers that he distributed calendars and informational letters in the neighborhood two years prior. Plaintiffs point out some residents will dispute having gotten anything, and that this concern over a lack of information or knowledge of the pipeline is documented in the Corrective Action Order.

Defendant Stark is a pipeline technician. Plaintiffs point out that he conducted a corrosion protection survey in August of 2002 for the purpose of detecting corrosion. Plaintiffs pose that the fact the pipeline, despite this 2002 survey, failed within two years raises questions about the quality of that survey, since corrosion is a slow process. So, say Plaintiffs, Stark had the technology available to him as a pipeline technician to both detect and prevent corrosion, but the extent to which he actually used these tools is subject to question at this point.

And Defendant Castle is the senior pipeline technician who supervises Stark. He protests any responsibility or liability, attesting that he did only occasional visual inspections of the pipeline from Route 23 and occasional aerial inspections. It is this lack of connection or proximity with the pipeline with which Plaintiffs take issue. They counter that it is

inadequate and unacceptable that a senior technician responsible for inspection and supervising would do so from remote visual observation sites. Castle was also listed on the letter distributed to residents as a person to contact for information.

Plaintiffs submit this information satisfies their obligation to state a colorable claim of negligence against Hayes, Castle, and Stark. Namely, these employee Defendants owed a duty to monitor, maintain, repair and/or educate and inform. These duties are imposed based upon their specific job responsibilities. They failed to comply with these duties because the pipeline leaked due to corrosion and the residents were not informed and educated about the pipeline so as to be aware of the potential risks.

At oral argument, Defendants called the Court's attention to a recent Eleventh Circuit case, *Legg v. Wyeth,* 428 F.3d 1317 (11th Cir. 2005). Defendants submit that pursuant to *Legg,* this Court must consider the affidavits presented by the employee Defendants and must accept these affidavits if unrefuted by an acceptable form of evidence. Defendants therefore argue that Plaintiffs' contentions about them are not in their Complaint, no other admissible evidence has been offered by Plaintiffs, and so the Court must find that there is an insufficient factual basis for Plaintiffs' claim of negligence against them. However, Defendants offer no reason to believe the Sixth Circuit would adhere to the approach for examining fraudulent joinder that is utilized by the Eleventh Circuit. *Legg* states that fraudulent joinder is examined by looking to the pleadings at the time of removal, supplemented with affidavits and deposition transcripts, similar to that used to adjudicate summary judgment motions. *Id.* at 1322-23. The Eleventh Circuit was critical that the trial court ignored the defense affidavits. *Id.* at 1323. The Sixth Circuit looks generally to whether a plaintiff has at least a colorable claim against the nondiverse defendant in state

court. Thus, *Legg* seems inconsistent with the Sixth Circuit's requirement that "all disputed questions of fact and ambiguities in the controlling ... state law [must be resolved] in favor of the non removing party." *Alexander,* 13 F.3d at 949.

But assuming *arguendo* that the Court cannot go outside the pleadings at removal and must accept Defendants' affidavits on their face and nothing else, Plaintiffs have still shown a colorable claim of negligence under Kentucky law. Plaintiffs acknowledge that the claims against the individual Defendants were alleged generally, but assert that this, in conjunction with the employee affidavits, is sufficient to state a colorable claim. The Court agrees. The Complaint alleges each of the three are employees of Markwest. It alleges that as such they had a duty to construct, maintain, repair, and/or monitor the pipeline and/or educate and inform the Plaintiffs about the pipeline. The affidavits evidence that each Defendant had at least one or more of the duties identified by Plaintiffs. And while Defendants affirm by affidavit that they reasonably complied with their work duties, these statements are not unrefuted, as Plaintiffs' Complaint alleges that they failed to fulfill their duties and responsibilities. In Kentucky, employees can be civilly liable for either misfeasance or nonfeasance. *See Pirtle's Adm'x,* 44 S.W.2d at 546; *Haynes' Adm'rs,* 140 S.W. at 179 ("We do not recognize any distinction, so far as the accountability of the servant to third persons is concerned, between the acts of misfeasance and nonfeasance."). Thus, disputed questions of fact as to the conduct or lack thereof by each employee have been raised, which questions at this stage are to be resolved in Plaintiffs' favor.

Finally, at oral argument, Defendants suggest this Court retain jurisdiction given that the standard in this circuit that a decision to remand for lack of subject matter jurisdiction

is not subject to appeal. *See* 28 U.S.C. § 1447(d) (prohibiting appellate review when the grounds for remand are lack of subject matter jurisdiction or defect in removal procedure under § 1447(c)); *see also Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712 (1996)(remands on grounds specified in § 1447(c) are immune from review under § 1447(d)). However, if this Court were to retain the case for this reason, it would be contrary to well-settled authority that removal statutes are to be narrowly construed, and that all doubts about the propriety of removal should be resolved in favor of remand. *Coyne,* 183 F.3d at 493.

In summary, although Defendants dispute the necessity of suing the individual Defendants, Plaintiffs are the "master of [their] claims." *Caterpillar, Inc. v. Williams,* 482 U.S. 386 (1987). As Kentucky does not prohibit suit against an individual employee or servant, Plaintiffs here are free to pursue those claims. And although at oral argument Defendants question Plaintiffs' motivation in doing so, this is not the proper realm of inquiry for this Court in considering a remand motion. *Jerome-Duncan,* 176 F.3d at 907 (motive in joining a party immaterial to determination of fraudulent joinder). The Court concludes Plaintiffs have stated a colorable claim against Defendants Hayes, Castle, and Stark, and therefore they were not fraudulently joined. Because complete diversity does not exist, remand to the Floyd Circuit Court is required.

In view of the Court's conclusion that it lacks diversity subject matter jurisdiction, the Court finds it is also without jurisdiction to address the other remaining motions, which will be passed to the sound discretion of the Floyd County Circuit Court judge.

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that:

(1)     Defendants' Motion to File a Supplemental Post-Hearing Brief (Doc. #40) is hereby **granted;**

(2)     Plaintiffs' Motion to Strike (Doc. #45) is hereby **denied,** but Plaintiffs' alternative Motion for Leave to File a Response to Defendants' Supplemental Post-Hearing Brief (Doc. #45) is hereby **granted,** and said tendered Response to Supplemental Post-Hearing Brief is hereby ordered **filed of record;**

(3)     Plaintiffs' Motion to Remand (Doc. #6) is hereby **granted,** with this action hereby **remanded, in its entirety,** to the Floyd Circuit Court from which it was removed;

(4)     The remaining pending motion (Doc. #7) is hereby **denied as moot,** as this Court lacks subject matter jurisdiction and therefore adjudicative authority over it; and,

(5)     This action is hereby **dismissed** and **stricken** from the docket of this Court. This _27th day of March, 2006.

Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\Opinions\05-71-ReidOpinion.wpd